Good morning, Your Honors. May it please the Court, I'm Stanton Jones from Arnold & Porter, and I represent BP. The $77 million compensation award in this case is one of the most extreme and unjustified windfalls gifted to any claimant under the Deepwater Horizon Settlement Agreement. The claimant here is a global commodities trader and merchandiser with offices in 22 different countries. It purchases and sells ammonia and fertilizer in literally dozens of countries around the globe. And critically, while this settlement agreement limits class membership to both business and individual claimants that suffered a loss as a result of the spill, this claimant's bill. And I'll get into some of the specific numbers, which are staggering, but the bottom line is by any metric, no matter how you slice it, this claimant did astronomically better financially in the relevant period. Just in time and the capabilities of the attorneys arguing this, what interested me was under the West sort of Howard theory, did you present the credible evidence of a sole superseding cause to the claims administrator? So your honor, a little bit of background, BP is not present in the proceedings before the claims administrator. BP doesn't have any visibility into what's happening that the claimants submit claims to the claims administrator. That happens completely outside of view. But in your, in your briefs, they're, they're heavy citations to the record. And I saw the citations to Stern, Finch, and what's the other fellow, Gispardo? Gispardo. Correct. And they did in October of 2018, their exhibits are pretty clear. There's a huge price bubble that explains all the loss that could be attributed. Yes. That's 2018. But then when you look at the record in back in February of 2016, you have the financial analysts for the claims administrator saying, we're concerned whether the loss was from the spill. We are very concerned. Could you know, could you send us evidence of, of what the revenue structure was? And so did the claims administrator ever get given this triggering event of credible evidence there is a sole other cause? So the claims administrator had the claimants' P&Ls and so could see that there was this price spike in 2008. That was certainly there. What didn't happen and what should have happened, the claims administrator did not conduct any investigation into whether this claimant could plausibly attest to a loss caused by the spill. Under the holding of this court in cases like Deepwater Horizon 3, subsequent decisions after the entire claims process here, like Howard Industries, the foundation and basketball team decisions. And importantly, when this case... None of those were even issued prior to Judge Barbie's ruling. Exactly right. Deepwater Horizon 3 was. That's the inception of this implausibility exception. Am I right legally? Yes. That's correct. Although, and I'll get to this, it's a little bit out of order, but in the more recent foundation and basketball team cases, this court vacated and remanded because, specifically because the district court had denied discretionary review on the attestation issue before West and Howard Industries. You're saying that's the same here. And that's exactly the same here. So we believe that this is a case where the record is clear that any attestation to a loss caused by the spill is so deeply implausible that a remand... And yet cases like the panels that you gave us, like the Alabama Bingo panel, they all already recognized that Deepwater Horizon 3 gave the implausibility exception permission. They look and they don't credit it. So the law, the structure was there, and then you've given these three declarations to the appeals panel, but they say that's rejected by Fifth Circuit law. Now, of course, your argument is that's changed now. But then the last paragraph says, in any event, they wouldn't win. Doesn't that suggest that they looked at the material and they concluded it wasn't a zero award? No, Your Honor. Quite the opposite. And this is critically important. The appeals panel's decision in this case very clearly contradicts the settlement agreement and the law on this attestation issue. The appeal panel said, and this is a quote, this was in rejecting BP's attestation and this was the rationale of the appeal panel, quote, claimant has satisfied the requirements of Exhibit 4B of the settlement agreement, and that is all that is required of it. And that's because they didn't see in advance, neither did Barbier, our change in law, which is what you're asking for, right? But the next paragraph, I'm sure you know, the conclusion then says, but even if the law didn't disallow that, they wouldn't win. So, am I wrong? In the conclusion. So, right, so I see the reference. I don't think it means what you're describing. If BP is correct about either the attestation or loss issues, if the claimant can't plausibly attest to the loss caused by this bill, or if the claimant didn't suffer any actual loss at all under the rubric of West, I think it would be undisputed that the award should be zero. Clearly the appeal panel's determination to affirm the full award rather than accept BP's offer of zero is based on the appeal panel's explanation in the decision. It simply didn't believe that there was any attestation requirement. And that's what claimant had argued. Claimant in the appeal panel briefing, just like in its briefing to this court, they didn't argue, yes, we can plausibly attest to a loss caused by this bill. We in fact have X, Y, there was none of that. The claimant argued to the appeal panel, as it did to this court, that there is no attestation requirement. Or, at most, that claimants simply need to attest to the accuracy of their financial statements, to the correctness of the numbers that get plugged into the settlement agreement's formulas. But we've never seen an implausible case before West. That's what we said in West itself. This is that remarkable implausibility. But there you had a basketball player's contract that was determinative. Then we get to Howard, and we're looking at market fluctuation arguments, and our court says, well, that's much more like what we've been seeing throughout, which is there are alternative causes. So, in some ways, Your Honor, in an important respect, this case is even more extreme than the West case. At least in West, the basketball player's income, it did go down in the year after the spill. Now, it turned out that that was attributable to the contract. But at least from the spill to the period after the spill, his income went down. This claimant's, this commodity trader's income, it didn't just go up, it went up by leaps and bounds. And let me just give you a couple of numbers. In 2009, the year before the spill, this claimant's revenue was $1.28 billion. In 2010, the year after the spill, it shot up to $2.09 billion. That is a 63% revenue increase in the year after the spill. Has their position been throughout, they have never tried to explain that? They simply say there can be no inquiry? Or have they ever tried to say there were multiple causes? They have never said, not one time throughout these entire proceedings, we can plausibly attest to a loss caused by the spill within the meaning of deepwater holes. Would it be common sense that if their business is moving the fertilizer all over the ports of the Gulf, that it would have had some overlapping cause? No? So, this was not developed because this investigation was not undertaken at the claims administrator. But based on what we do know in the record, the vast, vast majority of the commodities transactions at issue here never touch, never touch the Gulf. Certainly don't touch Tampa. I think at best, they've said that they're... Let's say you're right. It is a change. Now, we've done it in these two remands. But I think in your reply brief, you anticipated the question I'm going to ask you. What's the limiting principle? You did say this will be a teeny little subset. Am I correct that the subset would be where the claimant, where you've offered credible evidence that there is a sole superseding cause? Yes. Only in those conditions? So, Howard Industries, I think, identifies two. One would be where BP presents credible evidence of a sole superseding clause, and I think we have clearly satisfied that here. Both based on the dramatic upward trajectory of the claimant's finances after the spill and also pointing to this historically anomalous 2008 price spike that is the sort of glitch in the form. This is not a suspicious form case. Yes. But the other example, exactly, is... That hasn't been... Okay. Correct. So, the limiting principle is there should be... It's a little odd because here, Judge Barbee actually did grant review. What would be the relief? You would say we would... He didn't abuse his discretion in refusing. So, he refused discretionary review on the issues that we have raised in this appeal. Okay. I thought he granted it but then said you were so conclusory in presenting this one, he wouldn't reach it. I believe he said that he was refusing review or wasn't reaching the issue. I could get the exact language, but I don't believe... No, but it could be important. If you're wrong, he didn't refuse review. Instead, he grant review, but then on a procedural ground, he said, I'm going to reach that because I don't see anything given to me to support a social proceeding clause. So... What if he'd said that, that it was too conclusory, you hadn't made the argument to him? So, several responses. First, it can't be waived because under the stipulation between the parties, the attestation issues are preserved for appeal. I agree that you stipulated so it was preserved. Yes. But my question is, did you not submit the supporting documents to support the price bubble theory? So, we did. In our brief to Judge Barbier, we cross-referenced all of the appeal panel briefing that lays all of that out. The discretionary review briefs are limited to three pages, so to some extent, everything is conclusory compared to what this court is used to seeing. Let me ask you, Judge Barbier is reconsidering foundation basketball team cases, so is there any reason why we should stay this case until he comes out with a new version of what his discretionary review is or is not? Yes. So, first, a quick update. Judge Barbier has sent the foundation case back to the settlement program. The basketball team case, I think, is still a waiting decision on what the next steps should be in terms of whether there should be also sent back to the settlement program. I don't believe that the subsequent outcomes of those cases at the claims administrator phase or the district court would affect the outcome of this appeal. This court, in its decisions in the foundation and basketball team cases, held that, vacated the denial of discretionary review and sent it back for a factual investigation, a determination of whether the claimant could actually plausibly attest, and the further proceedings on remand will determine that for those individual claimants. This appeal is in the same posture as foundation and basketball team were when they were here, when they were before this court. In the reply brief, you say whenever there's a potential showing of also superseding cause, but later you say a credible evidence given of it. It would have to be the latter, correct? The language of Howard Industries is credible evidence, and under any standard, we've met it here. A business, a multi-billion dollar global commodities trader that made $810 million more in the year after the spill does not have a loss, much less a loss caused by the spill. Both sides appeared to think there was tension between Howard and, help me out, West. I'm not really sure, and I think you went so far as to say Howard's incorrect. It would seem to me if they're all built on the Deepwater Horizon 3 implausibility, and then I think we've got Judge Oldham and Judge Haynes both on foundation and basketball team, it seems like our courts decided the two are quite harmonious. So let me try to explain it. The issue there, there are two separate issues. There's the question of whether a claimant has a loss, an actual loss, a sort of injury component of Article 3, if you will. And then separately, can the claimant plausibly attest that its loss was caused by the spill? I would sort of liken that to the traceability or causation component of Article 3. On the attestation issue, can a claimant plausibly attest that its purported loss was caused by the spill? There's harmony from Deepwater Horizon through running all the way through this court's precedents through the foundation case, the basketball team case. This court's recent decision in a case involving potential illegal conduct by claimants also acknowledges the attestation requirement. And harmony in the appeals panels too? There is not harmony in the appeals panels. This case is a prime example. The appeals panel here said very clearly beyond the mathematical formulas in Exhibit 4B, nothing more is required. That ruling by the appeal panel just squarely reads the attestation requirement out. I interrupted you. Your time's limited. You were going to say, but in some sense there's tension or not? Yes. There is a separate issue on the loss issue, the sort of basic injury component, which is separate from the attestation issue. Howard addressed both of them. Howard, as I say, is in harmony with all the other decisions on the requirement to plausibly attest to a loss by the spill. But on the loss issue, David West said that, and my time is going to run out. Go ahead. I just finished this answer. So West said, and West is the first in time decision, the claimant got that wrong in its brief. It just mixed up the dates. So West is first in time and ruled that because the settlement agreement doesn't define loss, you have to look to the ordinary meaning, and the ordinary meaning of loss is an actual loss, not just the- It could be a business individual. I think, okay. Now I understand. That helped me. Thank you, counsel.  Very good. Thank you, Your Honor. Good morning, Your Honors. Samuel Zakaroff for the Appellee. I think the heart of the question of the case, as the Court has already indicated, is what does West stand for? Because under the prior opinions of this Court, cases like Policy 495 or the Howard case for a business economic loss claimant to establish causation basically requires following the V-shaped curve of Exhibit 4B. And if West overturned that in some fashion, if West changed the law, then their argument has a great deal more merit, because then all of a sudden there's an independent causation requirement that's been read in that was something that, and I just want to mention one example from Policy 495, where the Court goes back to the example of the farmers who set up their V-shaped curve, allowing for the planting season to be in the non-revenue part and the normal tort principles, there would be no economic loss here. However, under the settlement, there would be. And so I think we need to go back to the settlement, because the settlement has 13 different categories of loss, and most of the cases that this Court has seen come from the business economic loss side. And the business economic loss side is the only place where you have this V-shaped curve for establishing causation, which is the language that was used in Policy 495. It's the language that Judge Higginson used in the criminal conduct case. So how do you explain West? Well, it turns out that the heart of their claim is on page 5 of their reply brief, where they say there's no difference between the individual economic claims that West came under and the business economic claims that Tramo comes under or the Howard Industries case came under. And if I may, if the Court would indulge me for one second, let me just point out the difference between Exhibit 4 and Exhibit 8. Exhibit 4 is what controls business economic losses. Exhibit 8 is what controls individual economic losses. The only causation requirement, as this Court has said time and again, I know, Judge Engelhardt, most of the opinions that you've been on have not been published, but in two years on the Court, you've managed, by my count, to be on 13 of these panels that, by my assessment, have all said the same thing about ... It's kind of hard not to be on a panel with a PFP. He whispered to me there should be a separate parking space for you all. Yes, but somehow I think that's the record that I've seen, but so be it. But in 4B, the requirement for causation is stated on page 5, and it says simply, causation requirement for Zone D. These are facilities in Zone D. And it just says V-shaped revenue pattern, and that's it. And then it gives three different ways to do the revenue pattern. That's the only mention of causation in 4B. That's it. Whereas, if you look at the framework for individual economic loss in Exhibit 8, which is what controls the West case, and the Court was very careful about the West case. The Court had to find ambiguity in the settlement language about what constitutes causation, which no other panel has found with regard to Exhibit 4B. And it says that you must establish employment due to or resulting from the DWH spill for the class, with the following exceptions. An exception in paragraph number one is any individual who would bring a claim as a business loss. So right on the face of the instrument, you see that there is a clear distinction between individual economic losses, and these are going to be mostly, I mean, the West case is exceptional. Most of these folks are not going to have regular employment. They're not going to have regular, they have a second job. It's hard to maintain which were part of the spill, which were affected by the spill, which were not. And so there's very specific causation requirements all through Exhibit 8, which do not appear in Exhibit 4. Now, there— That, that, that is what Judge Haynes said in her concurring dissenting view, correct? Yes. Yes. But, but Judge Jones and Don Oldham, in the published majority, the West case seems to go a little further. No, the West case reversed on the grounds that the individual economic loss had not been established there because of the contract being for declining amounts over the time. There's no question between the majority and the, and the concurrence dissent there that this is all governed by the IEL, by the— Okay, but then, but, but both Judge Oldham and Judge Haynes are on foundation and basketball team, and they're both taking West as harmonious with Howard in business claims and sending it back. Yes, they're, they're taking them, and they're saying sometimes you have to look further. And it's important that both of those were denials of discretionary review, where they said there is some reason to look further here. In one, there was a question whether the foundation was a pass-through. And in the second one, there was an issue that has been complicated on many, in many appeals group, appeals panel of the settlement, which is you have an owner and a business at the same time. But in each case, the language is sort of the same verbatim. It's trying to say business claims with West and with Howard. Let's just give Judge Barbier a second look in case we— Yes, but even if you look at the language of, of Howard, that last passage, of course, they have to reject the entire holding of Howard, which is almost identical to this case. The same lawyers on both sides, the same single expert who says, I have another, an alternative universe theory under which they did just fine. All that was exactly the same in both, and both rejected. And in Howard, there was no discretionary review, and the court was affirmed on that. This court affirmed Judge Barbier. But on the Howard dicta at the very end, it says that it may help toward the further administration of the cases, that there is the sense that this is somehow precedential. Now, we have an issue that we've raised, and I don't want to put too much stock on it, but there's just not that many cases left. It's not clear what is going to happen with whatever this court does, because— The challenge here, though, really is the appeals panel was quite categorical. That is all that's required. We don't even need to look. To establish causation under 4B, I think that is the holding of this court in Deepwater in policy 495. But if we do have this narrow exception, there's a gatekeeping job when there's credible evidence of a sole superseding cause. Yes, and what it says is under those circumstances, the court should grant discretionary review. The court here did grant discretionary review, and it looked at— But he refused to reach this issue. He refused. What he said was that they didn't brief it to him, and they put it in cursory fashion, but he had the record below. It's true that BP does not participate at the claims process level, but BP does participate at the appellate level before the claims process, and so they were there. But what was difficult for me about your brief is you said, well, as to argue to the district court, they only gave three reasons they were computational. Yes. But when you look at what they said to Judge Barbier, there's a fourth, and it's bolded, fourth. Yes. So that was a little bit unclear in your brief. Judge Barbier found that they just said it in cursory fashion because, quite frankly— Didn't yet have West and Howard. But now we've got West, Howard, and we've got two remands. I'm not sure what—we do have two remands. And so here's my factual question— West is not a remand. West is a reversal. I think this is the elephant in the room, because if you look at the Finch statement and Stearns and Gaspardo, they presented to the appeals panel an enormous amount of evidence that $77 million was due to these fluctuations. Can I find anywhere in the record that your client actually said no? Here's what— In the opening statement in the claims process, the client begins by describing the nature of the business, describing— So what's the record site for that? Because my second question that's very specific but important to me is, digging back in, I find this financial analyst, Ms. Klein, in 2016, February, asking Ms. Borden—do you know? Is that a familiar name to you? Ann Marie Borden? No. Okay. I think she's with your claimant. Please provide detailed explanation as to this spike crash bubble. Yes. Where in the record did you provide the claims administrator an answer to the revenue? Where will I find it in the record? I will have to provide that, Your Honor. But that's really important, because otherwise the position is legally we don't even need to—we don't need to discuss that. I think that is our position legally, that if we meet the criteria of 4B for causation purposes, that's the end of the inquiry. That is— What if there's credible evidence of a completely different cause? I thought our court is making a little bit of a course direction change. I don't think so. I think that if policy 495 continues to be good law and Howard cites 495 as controlling authority, then the example of the farmers who suffered no economic loss, as this court described it, nonetheless are qualified because they meet the V-shaped curve of 4B. That's been the law of this circuit for at least six years now. If this case is remanded and you're instructed to advise the court what other causes there are, what would you come up with? Counsel says you've never offered any. In the opening of introductory memo dated March 6, 2013, which is a record on appeal 770 through 773— 770 through 773? Yes. The company's Tampa operations—and keep in mind, their comparisons are the total revenues of Tramo. This is a claim filed only on behalf of the Tampa Bay facilities that deal with—which Tampa Bay facilities includes three other facilities, including one just across the river in Port Jefferson here. What's described there is that these facilities shipped through the Gulf. Gulf shipping was disrupted, and there was a generalized disruption. And this is the point that Judge Southwick made in Deepwater Horizon 3, that once you have any kind of causal connection, any kind of nexus, it's going to be extraordinarily difficult to disentangle what happened here, what happened there. The Howard case too, the electronics industry, lots of— That's exactly the Howard case. It's very hard to distinguish this case from Howard on the facts. Indeed, this is a more compelling fact case than Howard because this is a company that— Howard was an electronics company, which just happened to have manufacturing facilities in the affected area. But this is a company that ships fertilizer up and down the Gulf Coast and does it heavily by sea. So it's obvious that this is a facility that is going to be affected when there's an oil spill. In fact, the Coast Guard shut down shipping during the Deepwater Horizon spill, as it shuts down shipping during many, many spills of much lesser size. So I think that they made the claim and they said, we were affected. We were affected because our shipping was affected. Now, does that explain the economic loss? Does that explain all of those details? That's exactly what the settlement was designed to avoid doing. It was designed to avoid a fact-by-fact accounting of each company's what is attributable to this. Because let me give you an example. Let's say that they made $500 in the period after the spill, but they would have made $500,000. That's a loss. Now, it's a loss not because they made less money than they had before, but it's a loss because the adverse effects of the spill may have been a factor that determined that they made much less than they would have. Now, these kind of counterfactuals are horrible and they're difficult to prove. They're difficult to litigate. And the settlement compromise, as this court has said over and over again, was that it took out that question of causation and instead just asked the question whether or not there was this V-shaped performance in revenues. And that is the definition of causation. It's very hard to reconcile the position. They're really claiming that West overturned policy 495 because policy 495 or the non-profit's opinion or any of these opinions is over and over saying that causation is presumed and as the language that BP presented at the settlement approval, causation is conclusive. It's irrebuttable that if you meet 4B, that's the end of the inquiry. And this court has never really debated that point. It's never really departed from that point. Just comment, in Deepwater Horizon 1, your opinion there and your dissent in Deepwater Horizon 1, you have uttered the phrase, causal damages. Policy 495 split the baby if you will, because on the part where class council lost, it was approving the matching of revenues and expenses over different periods of time, which was the concern going back to Deepwater Horizon 1. But on the causation side, the second part of the, where the court, where the claims administrator had come up with independent testing mechanisms for certain industries that would knock them out on causation, that would defeat 4B because it would not allow them to pick the relevant periods. On that, the court rejected it unanimously. But Deepwater Horizon 3 does say there could be an implausibility, an impossibility case. And Howard reiterates that in using terminology sole superseding cause. So that exists as a gatekeeping causation inquiry. That's a question as to when the district court might have to exercise its discretionary authority to review. The court has never said that is a substantive standard and never in Howard did it say it was a substantive standard. And in Howard, the court had exactly the same record as it did in Trammel. The court had before it the claim, oh no, there was a downturn in the electronics industry. We have a forensic accountant who can show that that's the explanation. And the court said, and Judge Barbier didn't even grant discretionary review. And the court said, that's fine. That's fine. We affirm. That was the holding of Howard. There is a difference between holding and dicta. And the holding of Howard was we affirm. And we affirm in part based on policy 495. Now, the position they take in their reply brief, they don't address policy 495 at all in their opening brief. In their reply brief, they say policy 495 never addresses the question of loss. But that's absolutely wrong. Policy 495 gives the example of the farmers. And the court says claimant eight. I'm going to interrupt just because your time is running out. What about there at the second point of appeals panel, a split in the appeals panel, as to whether or not they can look further outside the do the math argument if there's this credible evidence of a completely different cause than this bill. Wouldn't the Alabama bingo case at least be an example of a panel that did look and reject a claim? There is a separate part of the settlement agreement. This is a massive settlement agreement, your honor. There's a separate part of the settlement agreement dealing with fraud and criminal conduct. There is everything. The Alabama bingo case was built on fraud. Was fraud as was your opinion. I didn't find the law that clear. But you obviously know better than I do. So there are different parts of this. On the question of causation for a business economic loss, there is no split in the appeals panel. In fact, the Howard court cites the appeals panel in that case and doesn't challenge it, quotes the appeals panel in that case saying no appeals panel has ever credited the argument that they are making here, which is that a claimant who meets 4B for a business economic loss where there's not one of these extrinsic factors such as an individual involved, such as fraud, such as crime, many of the specified exceptions in the settlement agreement, what they said was no appeals panel has ever denied causation where the 4B V-shaped revenue curve is found. And that's it. And so if you look at the actual cases that it is, and you may, you wouldn't ever want to use critical terms of us, but you may just, you almost are forced to say foundation and basketball team are dodges. We're just being lazy. We've picked up on West and we're sending business claims back where the variable fixed is a little too difficult to figure out. Now we've got this, well, why don't you take a closer look, Judge Barbier. I've been at this too long to think that I'm going to tell a court that it's being lazy, but. But foundation and basketball team are. No, because foundation and basketball, I go back to the claim I said earlier, I don't think that there is much there, but foundation and basketball both had some element that was critical. One was this pass-through entity and there is a specified section in the agreement. They do parrot the sole superseding clause language. They cite West in that language from Howard. That's sort of this fatal little, you know, what do you do? And I can't deny that they cite it and I can't deny, but I can say what those cases are about. And particularly in the Pelicans case, the basketball case, there you had the individual owner bringing a claim. And so there was a real question whether he fell under the business economic law side or under the individual economic law side. There's a concern at the time of the settlement that people not be able to double dip. That is, make a claim as the owner of a business and also make a claim on behalf of the business. So there are special provisions that deal with that. So one can explain those under those particular circumstances. But what they cannot explain is the holding of Howard. Because under their theory, Howard had to have remanded because Howard didn't even get discretionary review. And the holding is what's critical in Howard. And these subsequent cases, which if my memory serves are both unpublished, do not purport to challenge that, the holding of Howard. And so I would suggest to the court that this is not. He did point out that your brief was unfortunately mistaken. Howard is subsequent to West. Yes. And they spanked us and I thank them for not doing it too hard. I was counsel in Howard. I read it first. I couldn't shake it out of my mind that that was the first case. But they petitioned, if I can just say one more thing. They petitioned this court, the court on Bonk, for review on Howard on the grounds that Howard is clearly wrong after West. And nobody asked to pull the court. Thank you. A little argument? Thank you. A few quick points. So first, the Claimant's Counsel focuses overwhelmingly on West, which addresses the lost issue, but overwhelmingly ignores all of this court's other decisions about the attestation issue. So separate from West and the question of loss, you have a series of this court's unbroken decisions acknowledging that every single claimant, business and otherwise, must plausibly attest to a loss caused by the spill. It starts in Deepwater Horizon 3, and it goes all the way through all the rest of the attestation cases. That is separate from the loss issue in West. It's an independent argument. But other than West, have we ever reversed Judge Barbier on that ground? Well, in the foundation and basketball team cases, reversed the denial. The laws are built on West. I mean, you said there's years and years of attestation case law until West. Had we ever reversed for failure to look into other causation? No. I believe foundation and basketball team, which cite both West and Howard industries interchangeably or together for these loss and attestation concepts. Those are the two examples that I'd point to. Claimant's Counsel relies on the policy 495 decision heavily. That case is about matching of revenues and expenses. It doesn't address either the loss or causation attestation issues in this appeal. And the distinction between those sets of issues goes all the way back to Deepwater Horizon 1. Deepwater Horizon 1 remanded for further consideration of two sets of issues. One was matching. That got followed up in the policy 495 decision. Deepwater Horizon 1 separately remanded or additionally remanded for further consideration of the loss and causation issues to assure that the settlement agreement in both its language and implementation complied with Article 3. Those issues are addressed in Deepwater. I hear the cross his argument to us today being one legally. Howard is this case and we didn't send it back and then factually at 770 to 773. We'll see that his client his client actually did say there were multiple causes. So let me respond to both of those points. Your Honor first Howard is distinguishable on the facts. First of all in this case, you have a claimant whose financial performance just astronomically skyrocketed after the spill which I think separates this case from others. Secondly in Howard the claim by BP and I acknowledge we made it and didn't win but the claim was that there were a variety of factors that contributed to the claimants purported losses including the economic recession in 2008 and other market factors. That variety of contributing factors is just it's both qualitatively and quantitatively different than what we have here. Here there is a single solitary sole reason that this company qualifies for an award under the settlement agreement and it's that historically anomalous spike in fertilizer prices in 2008. That is the only reason that they get any more just credible evidence. You think you have conclusive evidence. I believe we have conclusive evidence sufficient that this court could decide the question but at a minimum that we didn't West at yes, but at a minimum it should be remanded about then factually he says no no no it was answered a lot of the losses because they couldn't ship across the ports. So they were given numerous briefs throughout this entire process at the appeal panel phase the district court phase and 13,000 words in a brief in this court BP has been arguing consistently at every stage that they cannot plausibly attest to a loss caused by this bill and they never said otherwise in their briefs. They they just denied that there is an attestation requirement and I'll point you to the record their appeal panel brief at pages of 567 to 570 of the record their district court brief at page 244 and footnote 10 and their brief in this court primarily at pages the district court brief was page 244 of the record and footnote 10 and their brief in this court primarily at pages 26 through 28 and also 32 on page 32. They say that they can recover 77 million dollars here. Even if all that was there were all of the loss was caused by something other than the spill just in closing. This is precisely the type of case that this court has been warning about since Deepwater Horizon 1. It's a 77 million dollar windfall to a multi-billion dollar global commodities trader that just plainly doesn't have any loss at all much less a loss caused by the spill and article 3 does not permit federal courts to preside over such massive giveaways. Thank you, your honors. Today's cases will be in.